**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 24-cv-02499-RMR-STV

UNITED SOVEREIGN AMERICANS, INC.;
RAMEY JOHNSON; and
MICHAEL CAHOON,

Plaintiffs,

v.

JENNA GRISWOLD; and
PHIL WEISER,

Defendants.

---

**ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Scott T. Varholak entered on February 9, 2026, ECF No. 88, addressing Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. 71. Magistrate Judge Varholak recommends that the Defendants' motion be granted. Plaintiffs timely filed an objection to the Recommendation, ECF No. 89,[1] and Defendants filed a response, ECF No. 90. The Court has received and considered the Recommendation, the briefing, the record, and the pleadings. For the reasons stated below, the Court overrules Plaintiff's objection and adopts the Recommendation.

[1] Plaintiffs' objection does not comply with Civ. Practice Standard 10.1(a). Although it may, the Court will not strike the non-compliant briefing filed by Plaintiffs.

## I. BACKGROUND[2]

Plaintiffs United Sovereign Americans, Inc. ("USA Inc."), Ramey Johnson, and Michael Cahoon filed this suit against Defendants Jenna Griswold, in her official capacity as the Secretary of State of Colorado, and Phil Weiser, in his official capacity as the Attorney General of Colorado. In the Recommendation, Magistrate Judge Varholak comprehensively summarizes Plaintiffs' allegations that "Colorado's voter registration rolls contained hundreds of thousands of material errors and omissions during the 2022 and 2024 elections" and that "Defendants failed to adequately police and correct voter registration inaccuracies or otherwise ensure compliance with federal election laws." ECF No. 88 at 3. Ultimately, Plaintiffs assert several claims for relief under the Fourteenth Amendment, the Voting Rights Act of 1965 ("VRA"), the National Voter Registration Act of 1993 ("NVRA"), the Help America Vote Act of 2002 ("HAVA"), the Federal Information Security Modernization Act ("FISMA"), and the Colorado Uniform Election Code of 1992. *Id.* at 4. Defendants seek dismissal of the Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and Plaintiffs' failure to state a viable claim for relief under Fed. R. Civ. P. 12(b)(6). ECF No. 71 at 5-25.

## II. LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or

[2] The Court incorporates the "Background" section from the Recommendation, ECF No. 88 at 2-8, and the Motion to Dismiss, ECF No. 71 at 2-3.

recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## III. ANALYSIS

In the Recommendation, Magistrate Judge Varholak addresses Defendants' arguments and ultimately determines: (1) Individual Plaintiffs "asserted concerns about election integrity going forward do not supply Article III standing," ECF No. 88 at 15; (2) Plaintiff "USA Inc. lacks associational standing to bring this matter," *id.* at 17. Therefore, Magistrate Judge Varholak recommends the Court dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction. *Id.* at 17.

Plaintiffs submit the following objections: the Recommendation (1) misinterprets Plaintiffs' standing theory; (2) misapplies controlling circuit precedent; (3) misapplies *Akins* and misstates Plaintiffs' informational injury theory; (4) misapplies *Massachusetts v. EPA*; (5) misapplies organization standing doctrine; and (6) improperly resolves causation and redressability at the pleading stage. ECF No. 89. Plaintiffs also request leave to amend should be granted if the Court finds pleading deficiencies. *Id.* The Court addresses each below.

**A. Plaintiffs' Standing Theory**

Plaintiffs' first objection centers around the Recommendation's interpretation of their standing theory with respect to the NVRA claim. Plaintiffs argue that NVRA "authorized private suits for persons harmed by statutory violations" and that they need not provide evidentiary proof that Defendants indeed violated NVRA at the motion to dismiss stage. ECF No. 89 at 5. According to Plaintiffs, the Recommendation analyzed standing based on "vote dilution," whereas Plaintiffs' actual asserted injury was "statutory noncompliance with federal mandated voter registration list maintenance and federally protected election record integrity, coupled with prospective relief aimed at preventing recurrence." *Id.* at 4.

Plaintiffs are correct that they need not establish their claims on the merits at the pleadings stage. However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In this case, Plaintiffs' Amended Complaint contains conclusory allegations of past and potential future NVRA violations. Plaintiffs admit that, with respect to NVRA violations, "standing could be a troublesome burden to prove, particularly if the harm, such as voter fraud and dilution, has been committed on a class of people, or the electors as a whole, rather than on an

individual person." ECF No. 57 at 20. In a footnote, Plaintiffs state "it is unlikely Congress intended to require individual standing in cases where mass violations of the NVRA occur due to widespread errors," without citation to case law or legislative history to support this conclusion. *Id.* at 20 n.3.

In order to determine whether Plaintiffs have plausibly alleged an NVRA claim, the Court first determines what constitutes an NVRA violation. Prior to the NVRA, "Congress left it up to the States to maintain accurate lists of those eligible to vote in federal elections." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). The NVRA "erect[s] a complex superstructure of federal regulation atop state voter-registration systems." *Id.* (citation omitted). Congress enacted the NVRA to "increas[e] voter registration and remov[e] ineligible persons from the States' voter registration rolls." *Id.* (citing 52 U.S.C. § 20501(b)). "[T]he NVRA requires States to conduct a general program that makes a reasonable effort to remove the names of voters who are ineligible by reason of death or change in residence." *Id.* (citing § 20507(a)(4)).

Plaintiffs allege "Defendants have failed to fulfill their obligations under Section 8(a)(4) of the NVRA to conduct a general program that makes a reasonable effort to cancel the registrations of registrants who are ineligible to vote in Colorado's federal elections." ECF No. 57 at 45, ¶ 239. They conclusively claim they "have suffered and will continue to suffer irreparable injury as a direct result of Defendants' failure to fulfill their obligations to comply with Section 8(a)(4) of the NVRA." *Id.* ¶ 241. However, the Amended Complaint is completely devoid of factual allegations related to Defendants' alleged efforts (or lack thereof) to remove ineligible voters under the NVRA. Instead, the Amended

Complaint outlines Plaintiffs' calculations of error rates based on "extracted data from Colorado's statewide voter registration database." *Id.* ¶ 76.[3] Without facts related to Colorado's program to remove ineligible voters under the NVRA, Plaintiffs have failed to plausibly allege a violation of the NVRA, much less an injury caused by the alleged violation. Thus, Plaintiffs' first objection is overruled.

**B. Tenth Circuit Precedent**

Plaintiffs' second objection also relates to their NVRA claim. Plaintiffs contend the Recommendation cited case law involving "materially different injury theories" related to vote dilution rather than "Plaintiffs[‘] allege[d] violation of specific statutory duties imposed by NVRA." ECF No. 89 at 8. Plaintiffs argue "the relevant question is not whether Plaintiffs allege systemic election irregularities, but whether Plaintiffs plausibly allege deprivation of congressionally recognized statutory protections." *Id.* at 9.

For the same reasons explained above, Plaintiffs miss the point of the Recommendation's analysis. The reason the Recommendation evaluated Plaintiffs' allegations of "systemic election irregularities" is because the Amended Complaint only discusses and provides facts related to that alleged injury. The Amended Complaint includes numbers, data, and proposed calculations related to election errors, without any allegations related to Colorado's NVRA program to correct for election errors. Without

[3] Notably, Plaintiffs calculations do not account for possible double counting of errors. For example, it is possible that some amount of the 5,085 votes cast "by voters with illegal duplicate registrations" were also part of the 44,863 votes "cast by voters whose first date of casting a vote was done before the date of their registration." ECF No. 57 at 14. Thus, even assuming Plaintiffs' raw data is correct, the Court cannot be sure the data supports their ultimate conclusion. However, as Plaintiffs indicate, the Court need not and should not analyze the merits of their claims at this stage.

such facts, Plaintiffs have failed to sufficiently plead facts to support injury in fact under the NVRA, and the Court is unpersuaded by their second objection.

### C. Plaintiffs' Informational Injury Theory

Next, Plaintiffs take issue with the Recommendation's application of *Akins* to their NVRA claim. ECF No. 89 at 9 (referencing *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998)). In the Recommendation, Magistrate Judge Varholak explains that *Akins* is distinguishable from this case, because the plaintiffs in *Akins* alleged "concrete and personal" and "legally cognizable" injuries. ECF No. 88 at 13. Indeed, *Akins* evaluated the Federal Election Campaign Act of 1971 ("FECA") and the "extensive recordkeeping and disclosure requirements" it imposes on "political committees." *Akins*, 524 U.S. at 14. A group of voters filed suit to persuade the Federal Election Commission ("FEC") to treat the American Israel Public Affairs Committee ("AIPAC") as a political committee and that the AIPAC violated FECA's disclosure requirements. *Id* at 15-16. In *Akins*, the plaintiffs "filed a complaint with the FEC, stating that AIPAC had made more than $1,000 in qualifying expenditures per year, and thereby became a political committee" and requesting the FEC "to order AIPAC to make public the information that FECA demands of a political committee "*Id.* at 16.

The Supreme Court determined that the plaintiffs satisfied prudential standing, because the injury they alleged, "their failure to obtain relevant information," was "a kind that FECA seeks to address." *Id.* at 20. In its review of the pleadings, the Supreme Court was able to determine that the plaintiffs' injury in fact "consist[ed] of their inability to obtain information—lists of AIPAC donors (who are, according to AIPAC, its members), and

campaign-related contributions and expenditures." *Id.* at 21. Here, Plaintiffs have not alleged such concrete injuries. In their objection, Plaintiffs assert their "NVRA claim alleges failure to maintain voter registration records in compliance with federally mandated standards." ECF No. 89 at 9. However, as described above, the Amended Complaint does not include allegations related to Defendants' purported failure to comply with the NVRA's requirement to "conduct a general program that makes a reasonable effort to remove the names of voters who are ineligible by reason of death or change in residence." § 20507(a)(4). Instead, the Amended Complaint provides general voter data and proposed calculations that allegedly demonstrate election errors, without specifying concrete or particularized injuries related to the NVRA. The Recommendation appropriately highlights the differences between the injuries of the *Akins* plaintiffs and those of Plaintiffs in this case. Thus, the Court overrules Plaintiffs third objection.

**D. Plaintiffs' Sovereign Standing Theory**

Plaintiffs' next objection relates to the Recommendation's application of *Massachusetts v. EPA*, 549 U.S. 497 (2007). Plaintiffs contend that "the sovereign-standing framework of *Massachusetts v. EPA* does not govern this case." ECF No. 89 at 11. The Recommendation also states that "*Massachusetts v. EPA* does not support standing in this case." ECF No. 88 at 14. Indeed, the Court agrees that *Massachusetts v. EPA* establishes that a sovereign state, such as Massachusetts, can "have standing to challenge EPA's denial of their rulemaking petition." 549 U.S. at 526. Here, all parties agree that Plaintiffs are not a sovereign state and, thus, *Massachusetts v. EPA* does not apply to the standing analysis. Thus, Plaintiff's fourth objection is also overruled.

**E. Organizational Standing**

Plaintiffs further argue that the Recommendation incorrectly concludes that USA Inc. lacks associational standing.[4] ECF No. 89 at 11. Plaintiffs rely on *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) for the proposition that "formal membership is not dispositive where an organization functions as a representative body of individuals with common interests and shared governance participation." *Id.* at 12. Plaintiffs' objection misinterprets the Recommendation's analysis.

The Recommendation correctly states that, to demonstrate associational standing, "an association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." ECF No. 88 at 16 (citing *Hunt*, 432 U.S. at 343). Then, the Recommendation explains that Plaintiffs fail to assert associational standing on the first element, because they fail to demonstrate "its members would otherwise have standing to sue in their own right." *Id.* at 16-17. In this case, the Court has already found that Individual Plaintiffs have failed to establish standing in their own right. Thus, the Court agrees that Plaintiffs' associational standing argument fails, and Plaintiffs' fifth objection is overruled.

[4] The Court notes that the objection addresses associational standing with respect to "Unite4Freedom." However, Recommendation and the parties' briefing do not identify "Unite4Freedom" and instead discusses the associational standing of USA Inc. Thus, the Court analyzes this section with respect to USA Inc.

**F. Causation and Redressability**

Next, Plaintiffs take issue with the Recommendation's conclusion regarding causation and redressability with respect to standing. Plaintiffs contend the Recommendation reflected a "merits determination rather than a redressability analysis." ECF No. 89 at 14. According to Plaintiffs, they "need only plausibly allege that their injury is fairly traceable to Defendants' statutory noncompliance and that prospective compliance relief would likely remedy that injury." *Id.*

The Recommendation states that "[e]ven if Plaintiffs had alleged a concrete injury, they have not plausibly established causation or redressability." ECF No. 88 at 17. Magistrate Judge Varholak explains that "Plaintiffs do not allege facts demonstrating that the purported harm to their voting rights is fairly traceable to the specific actions of Defendants, as opposed to independent actors or speculative assumptions about election administration" and "Plaintiffs have not shown that the relief they seek would redress a personal injury." *Id.* at 17 n.7. The Court agrees. The Amended Complaint fails to allege facts that demonstrate actions by Defendants Griswold or Weiser are traceable to their alleged injuries. Instead, the Amended Complaint provides conclusory allegations that "Defendants have ignored or dismissed, and continue to ignore or dismiss, these concerns without apparent meaningful review, action, or response and therefore aver Defendants intend to administer and certify Colorado's 2026 (and subsequent) general election(s) (involving both state and federal contests) under the same inaccurate and flawed conditions as that have utilized in 2022 and 2024 in conducting Colorado's combined federal and state elections." Such statements are precisely the kind of

"threadbare recitals" and "conclusory statements" that cannot survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. at 678. Therefore, the Court accepts the Recommendation and overrules Plaintiffs' sixth objection.

### G. Leave to Amend

Finally, Plaintiffs request the Court grant them leave to further amend their complaint, should the Court accept and adopt the Recommendation. At this stage, the Court has overruled each of Plaintiffs' objections and accepts the Recommendation. Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." However, "the district court may deny leave to amend where amendment would be futile." *Parker v. WI Waterstone, LLC*, 790 F. App'x 926, 930 (10th Cir. 2019) (citation omitted). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* (citation omitted).

Plaintiffs assert, without conceding, the Recommendation's identified "standing defects are curable through more detailed pleading – particularly with respect to: Diversion-of-resources injury, Informational injury specificity, Ongoing statutory violation, Redressability clarification." ECF No. 89 at 16. Considering Plaintiffs' intention to cure the Amended Complaint's deficiencies, the Court will GRANT leave to file a Second Amended Complaint by **October 8, 2026**. If Plaintiffs file a Second Amended Complaint, Defendants shall file a response by **October 29, 2026**.

## IV. CONCLUSION

For the reasons set forth, the Court ORDERS:

1. Plaintiffs' Objection to the Recommendation, ECF No. 89, is OVERRULED;
2. The Recommendation, ECF No. 88, is ACCEPTED AND ADOPTED;
3. The Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. 71, is GRANTED; and
4. Plaintiffs may file a Second Amended Complaint by **October 8, 2026**. If Plaintiffs file a Second Amended Complaint, Defendants shall file a response by **October 29, 2026**.

DATED: September 21, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge